Shearer, C. J.
This cause is submitted to us upon the pleadings and the evidence, and we are asked to grant the writ prayed for, ousting the defendant from using the streets, avenues, lanes, alleys and highways, and from maintaining and operating its poles, wires, lines and cables on the streets of the city of Dayton.
Without stating the issues which are sufficiently familiar to counsel, we proceed at once to the question whether, under the testimony herein, the relator is entitled to the relief sought.
• Section 3461, Rev. Stat., provides that, “the mode of use'5 (of streets, etc., in a municipal corporation for telephone purposes) shall be such as shall be agreed upon between the municipal authorities of the city or village, and the company; and if they cannot agree, the probate court of the county, in a proceeding instituted for that purpose, shall direct the mode of construction so as not to incommode the public in the use of the same.
The contract under which the company has occupied and used the streets, etc., of the city, has expired; and for two years past, negotiations have, been pending between the city and the company, looking to an extension or renewal of the franchise; but thus far no agreement has been reached.
An ordinance renewing the franchise was submitted to the council by the board of city affairs, with the recommendation that it be passed. It was referred to the committee on law in conjunction with a special committee. This joint committee reported back the ordinance recommending certain amendments. Subsequently said ordinance was recommitted. The joint committee again reported back the ordinance with certain amendments, and said report was *275 adopted. Subsequently said amendments were agreed to, and the ordinance as amended was passed and referred to the board of city affairs for approval, This was on the 14th day of April, 1896, four months after the commencement of this action.
No action having been taken by the board of city affairs, that body, on June 26, 1896, was requested by the council to “either concur in the telephone ordinance, or return the same to council;” and again, on November 18th, 1896, a resolution was adopted by the council requesting the board of city affairs to return said ordinance “for consideration by this body before any final action is taken by the board.”
November 27,1896, said ordinance (having been returned to council on the 25th of November),was referred again to said committee on law and said special committee, where, so far as we know, it still reposes.
The testimony shows that, pending these negotiations, interviews were had between members of the council and representatives of the telephone company, in which the latter declared that the company would not assent to the ordinance proposed; the objection being the fixing therein of the rentals to be charged the patrons of the company for the use of its instruments, and this is urged as evidence of the refusal of the company to come to an agreement in the premises.
This provision was a violation of the last clause of section 3461 above quoted, which declares that, “nothing in this section shall be so construed as to authorize any municipal corporation to demand or receive any compensation for the use of a street, alley or public way, beyond what may be necessary to restore the pavement to its former state of usefulness. ” This was an attempt to secure indirectly a benefit which it cannot directly demand or receive. The company was justified in refusing to assent to this. It was not bound to submit to an illegal exaction, and the city could not lawfully insist upon it,
E. P. Matthews, City Solicitor, and Charles Kumler, Pros. Atty., for the City.
L. G. Richardson, General Solicitor, Chicago, and Gilbert H. Stewart, Columbus, for the Telephone Company,
The company asserts that it is,and always has been, ready to accept and agree to a lawful ordinance, but says that none has ever been presented to it. It also avers that the city authorities have never been able to agree among themselves as to a mode of use of the streets, etc., of the city by said company; that so far as the mode of use is concerned, said company'always has agreed, and now agrees with the city. It also avers that the city authorities are now formulating an agreement. And we find from the evidence that this is true, and that the company is not in default.
Again, it is shown that during the period covered by the contract, the city used, and still uses a large number of the company’s poles for its police and fire department wires, and that it has in use, free of charge for rental or service, about eighty of the company’s instruments.
Is the city in a position, under such a showing, to demand that the company shall be ousted from the use and occupancy of the streets, and that it shall remove its plant, representing an enormous investment, and thus deprive the public of the advantage of telephone service, merely because the company declines to assent to an illegal condition?
Certainly no relief should be granted until it is made to appear that no agreement can be made, and that the company, after such failure to agree, delays unreasonably to apply to the probate court to fix the mode of use as prescribed by law.
Writ refused and petition dismissed,